Monell, J.
The plaintiffs having made a prima facie ease, by showing the shipment of the butter in good order, it became necessary for the defendants to show that the butter had been stowed on board the vessel in a proper and suitable place, and in a proper and suitable manner. Having shown that, if they, did show it, the burden of proof was shifted, and the plaintiff was required to show, either that the place of stowage was not a proper or suitable place, or not the most proper and suitable place in the vessel, or was not stowed in a proper or suitable manner; or that, otherwise, the injury the butter sustained was through some other fault or neglect of-' the carriers.
The rule is, as stated in Clark v. Barnwell (12 How., U. S., 272, 283), that if the evidence on the part of the defence lay a foundation for a reasonable inference that the damage resulted from an imperfection in the goods when packed, or had occurred previously to their being shipped on hoard, the burden is thrown upon the shippers to rebut the inference; and when the commodity shipped is of a kind affected by heat, the shipper takes upon himself the risk of all loss proceeding from that cause (Nelson v. Woodruff, 1 Black, 156); and upon proof of proper stowage, the presumption will be that 'the injury occurred from improper packing, or from the quality of the commodity, or from damages of the seas.
The evidence in this case abundantly established that the butter was well stowed, and in the best and coolest part of the ship. One of the defendants’ witnesses described with much *669 exactness the place where the butter was put, about forty feet forward of the boiler, and was separated from the boiler by a bulkhead and a space of nine or ten feet for the coal bunk, and then another bulkhead some inches thick. He said it was stowed where the heat of the boiler could not affect it, and m the coolest part of the vessel. Another witness testified that there was no other place on board the ship as cool as where the butter was stowed, and that it Avas well stowed.
Upon this evidence, it seems to me, the burden of proof was changed. The defendants had shown that they' had done all that they, as carriers, were required to do, and had laid the foundation for the reasonable inference that the damage resulted from the quality of the commodity (a risk which the shippers took), or from imperfect packing, or from perils of the sea.
-Was such reasonable inference rebutted by the plaintiffs? I think not. The evidence in rebuttal was mostly of a negative character. Excepting the proof of the sound condition of the butter at the time- of-shipment, there was nothing of a positive character to show that it was damaged by reason of any fault or neglect of the defendants. It was not shoAvn, nor attempted to be shown, that the butter was placed in an improper or unsuitable part of the vessel, of that it was not properly stoAved. The eA'idence, which the defendants had given on these subjects, was left wholly uncontradicted and unimpaired by any direct or positive proof.
But it is claimed that there was enough evidence of another kind to justify a jury in finding that the injury occurred through the defendants’ fault.
It was shown that the butter Avas received by the consignees on the day of its discharge from the vessel, and, upon examination on the same or a subsequent day, was found to be in a seriously damaged condition; some of the packages nearly one third, some nearly one half, and some even more empty, and was oily, and what the witnesses termed “cooked.” It was also proved by several shippers, accustomed to forwarding butter to Hew Orleans in the month of August, that it would arrive in *670 good order, and was not liable to leak or drip, if it was well “stowed,” and, as some of the witnesses said, “well packed.” This -was the substance of all the evidence, and, from it, the jury were to find that the damage to the butter resulted from improper stowage or other misconduct of the defendants. They could not find that it arose from improper stowage against the' positive, uncontradicted evidence of the defendants’ witnesses, and there was no proof whatever of any other supposable misconduct on their part.
It was further shown, in order to furnish a reason for the damage, that on the day the 'butter was taken on board the weather was very hot, between eighty and ninety degrees— eighty-four on the 9th August, and eighty-seven on the 10th— and when it was discharged at New Orleans, one hundred and one degrees at noon, in the pilot-house of the vessel. The temperature of the water was from eighty-five to eighty-six degrees. There was also some evidence that butter exposed at a tempera-' ture of eighty or ninety degrees would melt and be injured. Several witnesses, residing in New Orleans, stated it as their im-. pression that the weather, at that place, in August, 1865, was about the same as usual, “about eighty degreesbut the defendants’ positive evidence of the precise state of the weather was left wholly otherwise uncontradicted.
1 do not look upon this as a case of conflicting evidence, but as one lacking any proof whatever to charge the defendants, after they had shown that the butter was stowed in the coolest, best, and most suitable part of the vessel; and I cannot agree that the mere proof of the good condition of the article on shipping, and its damaged condition on arriving, could justify the jury in wholly discrediting the defendants’ evidence, which otherwise was entirely unimpeaclied.
If there had been no other possible cause for the damage than a supposed improper stowage of the cargo, then a jury might' perhaps be authorized in finding, upon such evidence as was given in this case, that there must have been improper stowage. But such is not the case. On the contrary, the jury might have *671 found that the butter melted from the heat of the weather, either while loading, or during the voyage, or when lying upon the wharf at Hew Orleans—of which melting the plaintiffs took upon themselves the risk. Much of the evidence strongly tended to establish the belief that it was injured from its inherently defective quality, which was developed by the heat of the weather; especially as it was also shown that a very large quantity of other butter was taken upon the same voyage, and delivered in good condition.
Where the testimony of a witness is fairly open to suspicion, and there are facts and circumstances strongly tending to discredit him, it is the right of a jury to pass upon his credibility. But where the circumstances do not necessarily contradict the witness, inasmuch, as the damage might be attributable to different causes, and are thereby entirely consistent with and do not oppose the truth of the witness’s evidence, it would be wrong to allow a total disregard of such evidence.
It is only, in this case, by wholly discrediting the testimony of the defendants’ witnesses, and attributing the damage solely to improper stowage, that the defence can be overruled, for, if such testimony is to be believed. the verdict was not supported by the evidence. I cannot go to the length that, as the jury are the judges of the credit to be given to witnesses, their verdict must never be disturbed. To hold to such a doctrine would prevent the court from ever setting a verdict aside, as being against the weight of evidence.
On the ground, therefore, that there was no sufficient reason for discrediting the testimony of the defendants’ witnesses in regard to the stowage of the butter, inasmuch as the jury could have found other causes producing the damages, I am of the opinion that, taking the whole of the evidence, the defendants had established a defence, and the jury ought to have been instructed, as requested by the defendants, to give them a verdict.
There was enough in the evidence to authorize the jury to say that some one of the other causes had produced the damage; *672 and they had no right, by arbitrarily discrediting rinimpeached witnesses, to find that there was not and could not be any other cause than improper stowage.
The judgment and order should be reversed, and a new trial granted, with costs to abide the event.